Next is NLRB v. Medical Transport settled and it's been vacated. Arguments have been vacated. We'll hear Edwards v. Wells Fargo. Good morning, Your Honors. If it may please the Court, Paul D.S. Edwards, proper person. I was never quite clear on this. Your papers are very good. I know you're pro se. I can't tell if you're a lawyer or not. No, I just tell people I'm kind of smart, I guess. That's just being facetious. I just do a lot of reading and that's all I read. Thank you. I'd like to reserve three minutes. I meant it. Your papers are good. Let me ask you something here. It looks to me as though it's clear that it's the Magamfar brothers. Magamfar. Magamfar. Yes, Your Honor. It's their credit card. They're the only ones who have to make the payments. If you go out for lunch on the way back and you use the card, you're a permitted user. They've given you a card, just like I've given my kids credit cards on my account. And they're perfectly legal when they get lunch with them. But you don't have to pay the credit card bill. It won't come to you. And if you have, I don't know what your deal is with the Magamfar brothers, but if you just walk away, it's not your problem, it's their problem. Is that right? That's not right. And I guess what we have to discuss is Regulation Z. Reg Z says nothing about an authorized user. There's no definition, there's nothing. I don't think I'm up to that yet. I think what I'm asking about is your relationship to the credit card company as opposed to who they have to negotiate disputes with. Okay. I'm just asking if you have to pay the bills on this credit card. As far as I'm concerned, I do. As far as I'm concerned, for a year and a half, I paid the bills. Have you signed anything with the credit card company obligating you to pay bills incurred on this credit card? No, but in essence, I don't have to. When we asked that a card be sent to me under my name, and there's affidavits on this, we had stated, we were told that, Mr. Magamfar was told over the phone and I was told over the phone, within minutes, that I would be as responsible for my charges. Look, all of us, well, pretty much all of us have credit cards. And pretty much all of us, when we got them, we filled in a form with a bunch of small print. And one thing that was very clear, even though the print was small, was that we had to pay bills incurred on the card. Correct. As I understand it, you did not sign such a form. What you're telling us now is that there were phone calls that conveyed the idea that you ought to pay. Well, no. When we called up Wells Fargo to order a card from me, we got a customer service rep. It's in the affidavits. We requested a card. Customer service rep essentially said that, Mr. Magamfar, we'll assume it was a card. Do you realize that you're responsible for any of the debts that he incurs, and he will also be responsible for any debts that's charged on a card. I got on the phone after that and basically was told the same thing. The rep took my Social Security number, advised me that I would be liable for any debts that I incurred on this card and for any debts that were incurred on the credit card. I read all this stuff from Wells Fargo's people saying you wouldn't be. Where is the affidavit language that I should be looking for? For the record, I think 110. 110? Let me check. Well, that's Magamfar's affidavit. That won't do it. It's just before that. It's just before that. Here it is. Mr. Magamfar's is 110. Mine is. . . Oh, you're at 105. 105. Now, Wells Fargo can say. . . While we're on this, let's not go much further. Okay. It says that what you're suggesting is that there's, of course, this law which would suggest application means an oral or written request for an extension of credit that is made in accordance with the procedures established by a creditor for the type of credit requested. Correct, Your Honor. All right. Now, where is there in this record any evidence that you made this extension of credit in accordance with procedures established by a creditor? Well, it is my understanding, and I'm not new to this, that the. . . I mean, did you sign anything? Don't have to sign anything. But now, just a minute. In accordance with the procedures established by a creditor, is there anything in this record as to what those procedures are? At this point, no, because the lower court would not. . . Well, if there's nothing in there and they argue you didn't do it, then how do I help you? The only way is to remand this back so I can have discovery. Just a minute. It seems to me that you should have produced something that would show that you did it in accordance with the procedures. I read your affidavit. It says that they called you and that you, therefore, were on the hook. But I've never. . . I mean, I was born at night, but not last night. So I have had to do the same thing for people that are on my credit card. Sadly enough, some of those kids run around pretty scary with my card. There's nothing that suggests that the procedures established by the creditor were followed. I have nothing in your affidavit. I have only them saying he didn't ever get that credit. But they're not saying that they didn't state or refute the affidavits. They have not said it was not the procedures. That isn't what they're saying. They're not refuting the affidavit. They don't have to. They just say our procedures, which is the only thing he's arguing about, established by us, are it has to be in writing, it has to be done, it has to have all this stuff. And we didn't ever do it, and therefore he didn't have it as established by us. But under Regulation Z and under Nevada State statute, I am liable. And they are required. . . . . . and whether the statute really says it does. And, frankly, I'm not sure I'm with you. I'm more on obvious war than I am on anybody who gets a card. So my worry is that your best argument is that I made an oral request for extension of credit, which would make you somebody who might have to pay, but the second part, I haven't got any evidence, in accordance with the procedures established by a creditor. But their whole argument has been, Your Honor, throughout this whole thing, getting away from that little tidbit there, is that I'm not liable. An authorized user is not liable. They aren't liable if they're not established by a creditor, the procedures, the extension of credit. I mean, my worry is this. I've got all kinds. I mean, you're a good, for not a lawyer, you've really caused me a lot of work here. Thank you. I've read all kinds of statutes and all kinds of situations, and every one of these, if they're going to get you, they have to send you writing after writing after writing. They have to tell you all about what you're getting into. They can't do that when they're sending the application out without complying by the statute. They can't get you as an obligor if they don't send you all of this stuff. They have to send you thing after thing after thing. Now I'm trying to figure out how do you get them. I don't find it in the statute, but I do find this. You have to do it in accordance with the procedures established. And the law is pretty straight. Writing by them, telling you what the situation is, telling you how it goes, telling you what they've got to tell, and there's nothing in this record that it happened at all. We've got one telephone conversation. Well, when you say we have one, we have one where the issuing the credit card was established. We have numerous others where they discussed the account with me, discussed the disputes with me. Just the fact that they discussed the account with you and they violate the law doesn't mean that you're automatically an obligor, even if they did violate the law. Now, they're going to say, oh, he was their lawyer. We thought he was the lawyer. That's why we did it. And, I mean, frankly, I rely on all your stuff, not theirs. So I'm saying, okay, they violate the law when they talk to you. When they once find out you're not the lawyer, you don't get anything else. It always goes to the obligor. But you're eliminating the obligor to Mr. McInfar. Well, I'm saying to the ones that got on the writing, on the line writing, rather than just somebody calling them up, what you're really arguing to me, sir, and that's the thing I'm trying to get to here, a guy can call the bank and say, I'm going to be liable for the credit card. And automatically, if he calls the bank and says, I'm going to be liable on the credit card, he's entitled to every disclosure that the credit card would give to the obligor. That's what you're really arguing. Because that's what they told me. Now, I have to presume that's what they're telling me. It doesn't matter. It doesn't matter what they told you. You're just using their conversation. I'm trying to apply it to the statute. But in accordance with the procedures established by a creditor, which we've got all kinds of procedures under the law about what they should have done in order to get you to be liable, not just a call. Under my supplemental case that I believe is Hages out of Ohio, there the court said, and it's not the only court that said that, that once I requested a card, once the card was issued to me, once I signed that card. Agamfar has requested that you be issued it. But I received the card. I also requested it. It wouldn't matter if you requested it. My kids all have cards. If they had called Visa and said, I want a card on my parents' account, Visa would have told them, well, talk to your parents. Absolutely. I had to request cards for them. And I think that's the way the papers work. But the point here is since they issued a card and I go out and I All you have to suggest that you're an obligor is the phone call, and the question is whether that's enough to establish a genuine issue. Well, it's not only that. If I go out and charge the item under Reg Z as a cardholder, I'm entitled to this. You're not a cardholder. I am a cardholder under Reg Z. Thank you. Where's my Reg Z? You're a cardholder under Reg Z if you go back to the application of how you got it. Under Reg Z A8, cardholder means a natural person to whom a credit card is issued for consumer credit purposes. They issued me a credit card for consumer credit purposes, not for business. And that differentiates between most of the cases that are out there. Most of the cases have to do with someone disputing something, but the credit card was issued for a consumer purpose. Their purchases, their charges were for business or commercial purposes. Okay. Thank you, counsel. I guess not counsel, but Mr. Edwards. Thank you for the compliment. Good morning, Honorable Members of the Court. My name is Jay Smith, and I have the privilege and pleasure of being here this afternoon, or I guess still this morning, on behalf of Wells Fargo. Mr. Edwards is indeed a very skilled advocate. He makes his living filing lawsuits. He's filed in excess of 90 matters, and this is one of the many. It doesn't really help me, Annie. What I need to know is why isn't there a genuine issue of fact about whether he's an obligor based on the credit card company's representation to him, which I think we have to take as true on summary judgment, that he owed the money on the purchases he made on the card. I would submit in response to that there are several reasons, because materiality is the important issue. Assuming it's a factual issue to begin with, which I'm not sure that it is, because I believe it's a question of whether. Is this Rule 56? Yeah. Well, this is a Rule 12b-6 motion. It was turned into Rule 56 motion based on the fact that we went outside the pleadings as did Mr. Edwards. It was converted to Rule 56. The judge. Was it converted to a Rule 56? I think necessarily it had to have been because of the actual order of the judge in making the determination that he was not an obligor or account holder. The only way you can make that determination is to go outside the pleadings and take into account. Now, on Rule 56, the judge can't try the case and he can't make fact findings. That is absolutely correct. So. Material facts. You have to assume that an affidavit competent under Rule 56, under 56C and F, as I recall, decide the case as though what it says is true, even if it is contradicted. He says that the lady from the credit card company said, if you make purchases on the card, you will have to make the payments for them. You will be obligated. Why doesn't that establish a genuine issue of fact about whether he's an obligor? I do not believe it does for many, many reasons. Okay. Say them. The first of which, number one, a statement by that assuming it's true would not be competent and admissible evidence because it's hearsay, because it would be a lower level customer service operator, not someone who has an ability to bind the bank, number one. Number two, I believe that the issue is not even a factual issue. Wait a minute. No authority to bind the bank. A customer service operator. It's not really a hearsay problem. It's an authority problem. It's a problem that she's not an agent. But who else do you get to talk to? When you initially make an application, that would be the person that you talk to. But to actually apply for an account, as the court has pointed out, you have to go very specific procedures. You have to go through a credit card check. She's not an authorized. Credit check. So she's not a speaking agent. That's correct. And he has to go through a credit check. She's a speaking agent, in your view. What would be the next reason? You said I think there are eight. There are several, because we have to look at the question of materiality. The court is not required to accept unreasonable inferences, unwarranted deductions, or conclusions of law that are cast in the form of factual allegations. And when it's unreasonable to conclude by virtue of a phone call that somebody said, even if true, that you're going to be obligated on this account, that that elevates you to the level of an account holder. The second reason is it doesn't establish a genuine issue because it's too implausible without further evidence. It just doesn't make any sense. What's the third reason? You said you had about eight. I do. I'm just going through some notes. I wasn't sure if this was the question that was anticipated. Absolutely. Number three, before the suit was filed, he was clearly advised in no uncertain terms by the bank that the bank said he was not obligated on this account. And after suit, clearly in the affidavits. And so he was well aware that the bank took the position that he was not obligated. And I respectfully submit that the only person or party in the position that could even say whether someone is not obligated to it is the bank. And the bank said, you don't owe us. We can't collect against you. There's no way on earth, Mr. Edwards, that you're going to be responsible for these charges. You are not obligated for that. And then a final point, and this is the fourth reason. This would be a fourth reason. It's a little different. In any event, a second part of the motion that we filed, in addition to the standing issue, was failure to state a claim. And we, as in the bank, actually did comply with the FCBA by contacting Mr. Magenfar on the account. There were seven issues in dispute. This is all part of the affidavit that was submitted. So you complied by contacting Magenfar. Nonetheless, this is what makes it futile. Hold on. Let me make sure I understand what you're saying first before I get where you want to stay second. You're saying that you followed the regulation by consulting with the cardholder about the disputed charge, and that's all you have to do, whether Edwards had a right to require you to do it or not. We had no obligation to do it. But nonetheless, in this particular matter, the bank looked at the seven specific disputes. In one of them, a credit was given, a partial credit was given, a third dispute. It was charged back to the merchant. In the other four, the bank sent correspondence and communications to Mr. Magenfar, indicating that it required further information for him as the account holder. And Mr. Magenfar doesn't dispute that. When you read the affidavit that he submitted by Mr. Edwards, he says right in there, the bank called me on these various matters and these various disputes, and I said to them, it's not my problem, I don't know, speak with Mr. Edwards about it. And there the phone call wouldn't even matter. Exactly. Because it wouldn't matter if they told him he was an obligor or not, they corresponded with the cardholder. That's the party to whom they felt that the obligation from the bank runs. That's where the duty arises under the FCBA and under Regulation Z. Now, why is he not a cardholder under this Subsection 8 of Regulation Z? Because the language for a cardholder is a party, natural person to whom a credit card is issued for consumer credit purposes. And so you have to look. I know it's a technical act. I know it's a complicated act. But consumer credit, consumer part is satisfied if it's non-business. The credit part is only satisfied if credit has been actually extended to that party. And Mr. Edwards, contrary to his subjective belief, no credit has ever been extended to him. It's been extended to the account holders, Mr. Magenfar and his brother. And Mr. Edwards is simply using their credit. He hasn't undergone a credit application. He's not in a position where he could close the account or where he could add different account holders or add his son or his wife or anybody. Only the account holders are in a position to do that. He can't remove them. They can remove him. It's simply where the obligation runs back and forth. That's the contractual obligation. I'm happy to respond to any further questions that the Court may have. I know my time is very close. 12 CFR 2027, Rules Concerning Extension of Credit. It suggests that there is an open-end credit authorized user. It says about that, it says, a creditor may not require a creditworthy applicant seeking an individual credit account to provide additional signatures. But the creditor may condition the designated of an authorized user by the account holder on the authorized user's becoming contractually liable for the account, as long as the creditor does not differentiate on any prohibited basis in imposing this requirement. Isn't that what happened here? Isn't that what he alleges happened here? I don't know if that's what he alleges happened here, but he is using this as a privilege because the account holder has asked him to do that. Wells Fargo never took it to an additional step where it went and actually required Mr. Edwards to undergo a credit application or a credit check or obligated him on the account. And specifically, Wells Fargo treated him differently. I mean, not treated him differently, but they treat all authorized users differently than they do account holders. It's as simple as that. That's their practice. That's their policy. That's their procedure. Was there anything do you have any affidavits or anything? I'm a little worried because a cardholder is a natural person who has agreed with the card issuer to pay consumer credit obligations. And if I understand his affidavit right, he's saying that in that phone call he did. And you're saying that the woman he had the phone call with wasn't authorized. Now, I'm kind of an unpleasant fellow sometimes, and I ask to speak to people's supervisors, but most people are nicer than that. And they just take the person talking to them on behalf of the company to be what they purport to be, a person talking to them on behalf of the company. Why wouldn't that conversation be enough to establish a genuine issue here? I don't believe so for the reasons I set forth. Plus, you have to look at it, I guess, this way as well. When one sets up a credit card account, you're going to go into the bank, you're going to sign documents. When you want to add somebody, you have to go through and go through a series of questions to make sure they know you're the party. There's somebody that told him that. No, and that's the problem. With Mr. Edwards, they didn't go through a series of questions. What he says is true. That woman spoke out of turn. I think that woman was mistaken in terms of what the obligations are, and that's why when he got into this, not necessarily made stuff, but simply was mistaken in terms of what the obligations were at the time. I do see that my time is up. I'm happy to, if there were another question that I could satisfy, I'd be happy to do that. On our nickel, when we ask questions here, you made some reference to a whole bunch of other cases that Mr. Edwards has brought. That's correct. Are they all against Wills Fargo? No, they are not. Primarily against Mr. Edwards files a variety of actions. I know it's outside the record. We mentioned it early on. Fair debt collection practice cases are a huge part of what he does, suing collectors. And all pro se. All pro se. He has an action against a federal judge, which was dismissed last October. I don't understand why that matters. I don't know that I ---- He's a frequent filer. Yes, he is. Somebody can seek an order, but sometimes you fish in a lake that doesn't have many fish and you go home empty-handed almost all the time and occasionally catch a fish. I understand that. All of a sudden you hit pay dirt, you know. He's been quite successful at it, I think. Have you, has Wills Fargo ever offered to Mr. Edwards a credit application and so forth for the record? Well, as long as we're going to that ---- Of course, the record, of course. I can tell you exactly what has occurred. Mr. Edwards does have a credit card with Wills Fargo. It was after Mr. Magenfar dropped him as an authorized user on this account last summer, I believe. And I don't know the exact timing of it. Does he have a card now? He does have a credit card. And he pays it? And he has threatened to sue under a different act with respect to that credit card. Well, with respect to that credit card, he's an obligor. His claim is of a different variety than what is before the court today. On that credit card, I do believe he would be an obligor because he would be the account holder. And he would be the one absolutely responsible for that. Right. Is there anything at all in Section 1666A which says that anybody or someone who is not an obligor can bring a question on? No. The act is very specific. It uses the word obligor. It doesn't use the word card holder. And it uses it over and over and over again, which tells me that there must have been some very specific meaning to the use of that term. And when you get into Regulation Z, it expands it a little bit by saying it is a consumer to whom credit has been issued. And so, once again, you have to have that threshold matter be met, that credit actually be issued to that person to even qualify as the consumer for the limited purposes of this, of the applicability of this act. Thank you, counsel. Very good. Thank you very much. Edwards v. Wells Fargo is submitted. I'm sorry? I have three minutes. Did you say over three? I thought you went over three minutes. You went over. Yeah, the red light was on. We gave you extra time. Thank you. I guess we were interested. Thank you, counsel. Thank you, Mr. Edwards. All rise. This court for this session stands adjourned. Thank you very much. Thank you very much. I'll block for a second. When do those look dry? I don't know. When you look around the room and don't notice them. No, I'm sorry. I'm going to see you on Friday so I know who actually did the work on this case.
judges: Kleinfeld, Smith, Mills